IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEKA RUGGIERO<br>311 31st Street<br>Altoona, PA 16602 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No. _____ |
| v. | : <br> : | |
| MOUNT NITTANY MEDICAL<br>CENTER<br>1800 East Park Avenue<br>State College, PA 16803<br>and<br>MOUNT NITTANY HEALTH SYSTEM<br>d/b/a MOUNT NITTANY HEALTH<br>1800 East Park Avenue<br>State College, PA 16803 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, Aleka Ruggiero (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Plaintiff against Mount Nittany Medical Center and Mount Nittany Health System d/b/a Mount Nittany Health (*hereinafter* collectively referred to as "Defendants" unless indicated otherwise) for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et seq.*).[1] Plaintiff asserts, *inter alia*, that she was unlawfully

---

[1] Plaintiff plans to amend her instant complaint to include claims under the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. §§ 951 *et. seq.*) when those claims become administratively exhausted with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff's claims under the PHRA would mirror her federal claims under the ADA as set forth herein.

terminated by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual with an address as stated in the above-referenced caption.

7. Defendants are business entities that upon information and belief jointly do business as Mount Nittany Health, a medical center located at 1800 East Park Avenue in State

College, PA 16803 (the location at which Plaintiff worked). Defendants are also listed at the same address with the Pennsylvania Department of State.

8. While Mount Nittany Medical Center appears on Plaintiff's W-2, "Mount Nittany Health" appears on multiple documents issued to Plaintiff during her employment with Defendant, including but not limited to employment policies and procedures; for example, in Defendants' correspondence regarding Plaintiff's termination, "Mount Nittany Medical Center" appears on the cover letter, while "Mount Nittany Health" appears on the enclosed disciplinary form.

9. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

10. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was hired by Defendants in or about 2008 as a Registered Nurse ("RN").

13. During her employment with Defendants, Plaintiff was a dedicated and hard-working employee who performed her job well.

14. Plaintiff has and continues to suffer from serious health conditions, including but not limited to eosinophilic esophagitis (a chronic immune system disease) and anxiety.

15. Because of Plaintiff's aforesaid health conditions, she is (at times) limited in her ability to perform some daily life activities, including but not limited to eating, sleeping, and engaging in social interactions.

16. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, due to Plaintiff's health conditions she (at times) required reasonable accommodations, including but not limited to, not being *required* to take certain vaccine(s) (vaccines that were not mandatory in the medical field or for Plaintiff's license as an RN).

17. On or about April 22, 2015, Plaintiff received a memo from Defendants stating a new requirement (of Defendants) that all clinical employees (such as Plaintiff) get a TDAP (Tetanus, Diphtheria, and Pertussis) vaccination.

18. Prior to the aforesaid memo in 2015, Defendants had never required Plaintiff to get the TDAP vaccination in her approximate seven (7) years of employment with Defendants.

19. On or about May 20, 2015, Plaintiff emailed Christina Duck ("Employee Health Assistant") advising: "I have a doctors [sic] appointment on June 2nd regarding the TDAP vaccine. This is the soonest they had available."

20. On or about June 2, 2015, Plaintiff's doctor (Susan Dib, MD, *hereinafter* "Dr. Dib") issued a prescription note advising that Plaintiff "is medically exempt from receiving tdap immunization for medical concerns."

21. In a letter dated June 10, 2015, Emma Smith, RN (Employee Health Coordinator, *hereinafter* "Smith") acknowledged receiving Plaintiff's aforesaid doctor's communication

4

regarding the TDAP immunization, listed manufacture contraindications,[2] and requested Plaintiff's doctor identify the medical contraindication that applied to Plaintiff.

22. In or about July of 2015, Plaintiff called Defendants' head of nursing, Janet Schachtner, RN (*hereinafter* "Schachtner")[3] regarding Defendants' June 10, 2015 correspondence (described *supra*), at which time Schachtner told Plaintiff that as long as Plaintiff's doctor mentioned Plaintiff's eosinophilic esophagitis (in conjunction with an accommodation request not to get the TDAP vaccine) there should not be a problem.

23. On or about July 10, 2015, Dr. Dib reiterated that Plaintiff is medically exempt from the TDAP vaccine in a letter stating in part:

> Aleka Ruggiero is medically exempt from receiving the Tdap immunization due to severe anxiety with some side effects she read with this injection, especially with her history of having many food allergies, environmental allergy and eosinophilic esophagitis.

24. In a letter dated July 15, 2015, Defendants' Employee Health Coordinator Smith stated that Defendants received Dr. Dib's further explanation on July 15, 2015 (same date as Smith's letter) and, according to Smith,[4] the "documentation provided by Dr. Dib does not meet the definition of medical contraindication as detailed in the manufacturer's vaccine literature and *thus Tdap immunization is required.*" (emphasis added)

---

[2] A contraindication is something (such as a symptom or condition) that is a medical reason for not doing or using something (such as a treatment, procedure, or activity).

[3] Upon information and belief, at that time Janet Schachtner's title with Defendants was "Senior Vice President of Patient Care Services."

[4] In same letter (denying Plaintiff's request for accommodation), Smith does not name any other medical professionals and does not explain how Smith is better qualified to assess Plaintiff's health needs than Plaintiff's primary physician.

25. On or about July 22, 2015, Plaintiff was removed from work and effectively terminated because she did not receive the TDAP vaccine, in accordance with the recommendations of her physician (discussed *supra*).

26. In a letter dated July 31, 2015, Defendants formalized Plaintiff's termination in writing, per a "Record of Corrective Action" solely for not getting a TDAP vaccination; in so doing, Defendants violated Plaintiff's rights to a reasonable accommodation under the ADA:

   a. The TDAP vaccine was not legally mandated in the health field, not mandated by any regulatory body, and was not essential for Plaintiff to perform her job duties (as Plaintiff had performed for several years without such a vaccination)

   b. Defendants denied Plaintiff's accommodation suggestion that she wear a mask (as was allowed by RN's who refused the flu vaccine) and made no attempt to otherwise accommodate Plaintiff, such as with a transfer.

   c. Defendants had represented to Plaintiff that she could be exempt from the vaccine if she had a medical exemption (as discussed *supra*) and, upon information and belief, other employees of Defendants were allowed to not have the TDAP vaccine and remain employed with Defendants.

27. Plaintiff therefore believes and avers that she was removed from work and terminated because of her actual/perceived/record of disability, in retaliation for her request for accommodations, and/or Defendants failed to accommodate Plaintiff.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)
-Against All Defendants-

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited to, sleeping, focusing, and engaging in social interactions.

30. As a result of Plaintiff's health conditions (discussed *supra*) Plaintiff requested reasonable accommodations from Defendants, including but not limited to being allowed to work without receiving the TDAP vaccine, which Defendants' began to mandate as policy in 2015.

31. Plaintiff's aforesaid accommodation request was reasonable because: [1] the TDAP vaccine was not medically required; [2] the TDAP vaccine was not mandated by any regulatory body; [3] the TDAP vaccine was not essential for Plaintiff to perform her job as an RN (as she had worked for Defendant for many years without such a vaccination); [4] Defendants allowed other similarly-situated employees to work without the TDAP vaccine; and [5] Plaintiff's primary physician *recommended the accommodation*, also supplying Defendants with multiple documents attesting to same, prior to Plaintiff's termination.

32. Defendants failed to engage in any interactive process to reasonably accommodate Plaintiff, as: [1] Plaintiff was told by Defendants (VP Schachtner) that her request should be approved; however, subsequently, Defendants unilaterally denied Plaintiff's physician-recommended request and gave Plaintiff the ultimatum to either get the vaccine or be removed; [2] offered Plaintiff no alternatives to receiving the TDAP vaccine (i.e. transfer, working with a mask); and [3] terminated Plaintiff solely based on not receiving the TDAP vaccine, despite, upon information and belief, allowing some employees to continue working without receiving the TDAP vaccine.

33. Therefore Plaintiff was issued discipline and later terminated from Defendants because of her (1) actual/perceived/record of disability, (2) in retaliation for her request for accommodations, and/or (3) Defendants failed to accommodate Plaintiff

34. These actions as aforesaid constitute violations of the ADA, as amended.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.     Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                                        Respectfully submitted,

                                        **KARPF, KARPF & CERUTTI, P.C.**

                           By:          _____
                                        Ari R. Karpf, Esq.
                                        3331 Street Road
                                        Two Greenwood Square
                                        Suite 128
                                        Bensalem, PA 19020
                                        (215) 639-0801

Dated: September 21, 2016